Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
300 South First Street, Ste. 342
San Jose, California 95113
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: service@moorelawfirm.com
        tanya@moorelawfirm.com

Attorneys for Plaintiff
Jose Trujillo

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO,<br><br>  Plaintiff,<br><br>vs.<br><br>TULARE VILLAGE, LLC; PHILLIP A. MEHAN, individually and as Trustee of the COMMUNITY TRUST CREATED UNDER THE PHILIP A. MEHAN AND IRIS M. MEHAN INTER VIVOS TRUST AGREEMENT dated September 9, 1985; IRIS M. MEHAN, individually and as Trustee of the COMMUNITY TRUST CREATED UNDER THE PHILIP A. MEHAN AND IRIS M. MEHAN INTER VIVOS TRUST AGREEMENT dated September 9, 1985; TONG KAI INC. dba GRAND STAR BUFFET; FULGENCIO RAMIREZ CHILITOS MEXICAN RESTAURANT, INC. dba CHILITO'S;<br><br>  Defendants. | No.<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER THE AMERICANS WITH DISABILITIES ACT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)** |

## I. SUMMARY

1. This is a civil rights action by plaintiff JOSE TRUJILLO ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

      (a)      Grand Star Buffet
                   1167 North Cherry Street
                   Tulare, California 93274
                   (hereafter "the Grand Star Facility")

      (b)      Chilito's
                   727 East Prosperity Avenue
                   Tulare, California 93274
                   (hereafter "the Chilito's Facility")

Each of the facilities identified above shall be collectively hereafter referred to as "the Facilities."

2.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes, against:

    a)    TULARE VILLAGE, LLC; PHILLIP A. MEHAN, individually and as Trustee of the COMMUNITY TRUST CREATED UNDER THE PHILIP A. MEHAN AND IRIS M. MEHAN INTER VIVOS TRUST AGREEMENT dated September 9, 1985; and IRIS M. MEHAN, individually and as Trustee of the COMMUNITY TRUST CREATED UNDER THE PHILIP A. MEHAN AND IRIS M. MEHAN INTER VIVOS TRUST AGREEMENT dated September 9, 1985 (hereinafter collectively "the Landlord Defendants");

    b)    TONG KAI INC. dba GRAND STAR BUFFET (hereinafter "the Grand Star Defendant"); and

    c)    FULGENCIO RAMIREZ CHILITOS MEXICAN RESTAURANT, INC. dba CHILITO'S; (hereinafter "the Chilito's Defendant").

The Grand Star Defendant and the Chilito's Defendant are collectively referred to herein as "the Tenant Defendants," and together with the Landlord Defendants, collectively the "Defendants."

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

### III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

### IV. PARTIES

7. Plaintiff believes, and thereon alleges, that the Landlord Defendants own, operate, and/or lease the real property consisting of the real property and common areas of the Facilities as well as the physical structures thereon (including the buildings in which each of the individual Tenant Defendants' Facilities is located), and consist of a person (or persons), firm, or corporation. Plaintiff further believes, and thereon alleges, that the Landlord Defendants lease the respective Facilities to the Tenant Defendants as follows:

    a) The Grand Star Defendant owns, operates, and/or leases the Grand Star Facility, and leases the Grand Star Facility from the Landlord Defendants; and

    b) The Chilito's Defendant owns, operates, and/or leases the Chilito's Facility, and leases the Chilito's Facility from the Landlord Defendants.

8. Plaintiff is substantially limited in his ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

### V. FACTS

9. The Facilities are open to the public, intended for non-residential use, and its operation affects commerce. The Facilities are therefore public accommodations as defined by applicable state and federal laws.

//

10. Plaintiff lives less than fifteen miles from the Facilities and visited the Facilities on or about August 15, 2021 to have dinner at the Chilito's Facility, and August 21, 2021 to have dinner at the Grand Star Facility. During his visits to the Facilities, Plaintiff personally encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facilities. These barriers include, but are not necessarily limited to, the following:

a) During both of Plaintiff's visits to the Facilities, he had difficulty locating designated accessible parking due to the lack of proper signage at the designated accessible parking stalls in the parking lot serving the Facilities.

b) During Plaintiff's August 15, 2021 visit to the Chilito's Facility, he parked in a designated accessible parking stall near the Chilito's Facility. He could not find a van-accessible parking stall in that area. The access aisle next to his parking stall was too narrow, so Plaintiff had to park partially obstructing the adjacent parking stall. There was still not enough clear space for him to fully open his vehicle door, so Plaintiff needed help from his daughter to transfer to his wheelchair.

c) During Plaintiff's August 15, 2021 visit to the Chilito's Facility, the entry walkway leading to the Chilito's Facility was excessively sloped and uneven, causing Plaintiff to require assistance from his daughter to push his wheelchair.

d) During Plaintiff's August 15, 2021 visit to the Chilito's Facility, the entrance door was heavy and difficult for Plaintiff to open.

e) During Plaintiff's August 15, 2021 visit to the Chilito's Facility, the table at which Plaintiff and his family were seated was too low and did not have sufficient knee and toe clearances to accommodate Plaintiff's wheelchair, so he had to sit far away from the table and extend himself uncomfortably to be able to reach his plate.

*Trujillo v. Tulare Village, LLC, et al.*
Complaint

Page 4

  f) On August 15, 2021, it was difficult for Plaintiff to make his way to and from his table at the Chilito's Facility because the path of travel through the dining area lacked sufficient clear width. Patrons sitting at the tables and infants in high chairs made the aisle too narrow for Plaintiff's wheelchair to fit through. Plaintiff had to ask the other customers to move to allow him to pass. This was embarrassing, especially as he could overhear some diners complaining to each other about having to move. He needed to use the restroom while dining, but decided not to because he did not want to go through the humiliating experience of having to ask other diners to move for him again.

  g) On August 15, 2021, Plaintiff could also see that there were double swinging doors along the route of travel to the restroom at the Chilito's Facility which he would not be able to maneuver his wheelchair through easily, if at all. This contributed to his decision not to use the restroom.

  h) On August 15, 2021, Plaintiff could see that the transaction counter at the Chilito's Facility was too high for him to use. He had to pay at the table instead.

  i) On August 21, 2021, Plaintiff parked in a designated accessible parking stall near the Grand Star Facility. Plaintiff could not locate an accessible route to the Grand Star Facility from his parking stall, as there was no curb ramp nearby. Plaintiff had to travel through the vehicular drive in search of a ramp so that he could wheel onto the entry walkway. Additionally, Plaintiff encountered a large vertical height change at the transition from the parking lot to the curb ramp that was difficult to wheel over.

  j) On August 21, 2021, Plaintiff had difficulty entering the Grand Star Facility, as the entrance door required excessive force to open and the threshold was raised, causing his wheelchair to get stuck.

   k) On August 21, 2021, Plaintiff was seated by staff at the Grand Star Facility. The table at which he was seated was too low and did not have sufficient knee and toe clearances to accommodate Plaintiff's wheelchair, so he had to sit far away from the table and at an uncomfortable angle, which made it hard to reach his food.

   l) On August 21, 2021, it was difficult for Plaintiff to pay for his meal at the Grand Star Facility because the transaction counter was too high for him to reach and see the payment device. Additionally, the counter was obstructed with merchandise and other items, which were difficult for Plaintiff to reach over.

11. There may exist other barriers at the Facilities which relate to Plaintiff's disabilities, and he will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facilities and relate to his disabilities removed to afford him full and equal access.

12. Plaintiff was, and continues to be, deterred from visiting the Facilities because Plaintiff knows that the Facilities' goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facilities, and will return to the Facilities once the barriers are removed.

13. Defendants knew, or should have known, that these elements and areas of the Facilities were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facilities (without much difficulty or expense), and make the Facilities accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

//

//

//

14. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facilities to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facilities to conform to accessibility standards. Defendants have intentionally maintained the Facilities in their current condition and have intentionally refrained from altering the Facilities so that they comply with the accessibility standards.

15. Plaintiff further alleges that the (continued) presence of barriers at the Facilities is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facilities; conscientious decision to maintain the architectural layout (as it currently exists) at the Facilities; decision not to remove barriers from the Facilities; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facilities are not in the midst of a remodel, and that the barriers present at the Facilities are not isolated or temporary interruptions in access due to maintenance or repairs.

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

16. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

17. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

//

//

1    18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facilities during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facilities without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facilities' barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.    Plaintiff alleges on information and belief that the Facilities were designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

24.    The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

//

//

25. Here, Defendants violated the ADA by designing and constructing (or both) the Facilities in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

### Failure to Make an Altered Facility Accessible

26. Plaintiff alleges on information and belief that the Facilities were modified after January 26, 1993, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Defendants altered the Facilities in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facilities, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

### Failure to Maintain Accessible Features

31. Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facilities that are required to be readily accessible to and usable by persons with disabilities.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

32. Such failure by Defendants to maintain the Facilities in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

33. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## VII.   SECOND CLAIM

### Unruh Act

34. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

35. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

36. California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

37. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

38. Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

39. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

40. Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

41. Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

//

# VIII. THIRD CLAIM

## Denial of Full and Equal Access to Public Facilities

42. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

43. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

44. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

45. Plaintiff alleges the Facilities are public accommodations constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facilities were not exempt under Health and Safety Code § 19956.

46. Defendants' non-compliance with these requirements at the Facilities aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.
2. Statutory minimum damages under section 52(a) of the California Civil Code according to proof.
3. Declaratory relief finding that Defendants violated the ADA.
4. Attorneys' fees, litigation expenses, and costs of suit.[2]
5. Interest at the legal rate from the date of the filing of this action.
6. For such other and further relief as the Court deems proper.

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

1 | Dated:        07/01/2022              MOORE LAW FIRM, P.C.
2
3                                          */s/ Tanya E. Moore*
   Tanya E. Moore
4   Attorney for Plaintiff
   Jose Trujillo

# VERIFICATION

I, JOSE TRUJILLO, am the plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: 07/01/2022                              */s/ Jose Trujillo*
                                               Jose Trujillo

I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                               */s/ Tanya E. Moore*
                                               Tanya E. Moore
                                               Attorney for Plaintiff,
                                               Jose Trujillo